IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DANIEL ANTHONY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:24-CV-2394-D |
| VS. | § | |
| | § | |
| HENDERSON COUNTY, TEXAS, | § | |
| et al., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

In this action by plaintiff Daniel Anthony ("Anthony") arising from his arrest and

detention in the Henderson County Jail, two defendants—Philip R. Taft, Psy.D ("Dr. Taft")

and Philip R. Taft, Psy.D & Associates, PLLC ("Taft PLLC") (collectively, the "Taft

Defendants")—move to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim on

which relief can be granted. For the reasons that follow, the court denies the motion.

I

Anthony suffers from muscular dystrophy, which in his case has resulted in a

significant speech impediment and an inability to move or walk as easily as a healthy person.[1]

_____

[1]In deciding defendants' Rule 12(b)(6) motion, the court construes Anthony's first amended complaint in the light most favorable to him, accepts as true all well-pleaded factual allegations, and draws all reasonable inferences in his favor. *See, e.g.*, *Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004). "The court's review [of a Rule 12(b)(6) motion] is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

He also suffers from post-traumatic stress disorder ("PTSD"), for which he takes prescription medication.

On September 23, 2022 Anthony asked a gas station attendant to call the police so that he could report that his uncle had stolen some of his belongings. City of Trinidad Chief of Police Brian Miers ("Chief Miers") responded to the call. When Chief Miers arrived at the gas station, he incorrectly assumed that Anthony was a drug addict and placed him in handcuffs. Chief Miers then accused Anthony of having AIDS and sprayed him in the face with pepper spray. When Anthony reflexively shook his head around, Chief Miers accused him of "trying to get his AIDS on him," and arrested Anthony under the fabricated charge of harassment of a public servant. Am. Compl. ¶ 13.

Anthony was taken briefly to the hospital and then to the Henderson County Jail, where he was booked in and immediately placed in the jail's "violent cell" for seven days. The violent cell is a completely stripped cell that has no toilet, shower, sink, running water, furniture, or bedding. Lights in the violent cell are kept turned on at maximum brightness at all hours of the day and night, and food and a small beverage are provided only three times per day. During the time when Anthony was held in the violent cell, he suffered from untreated foot injuries, sleep deprivation, dehydration, the "total deprivation of every imaginable element of basic human hygiene," *id.* ¶ 28, and the deprivation of the many advantages given to the other inmates. In addition, although Anthony informed jail staff that he had PTSD and muscular dystrophy, he was never seen by any medical or mental health staff during the entire time he was in the violent cell. Nor was he given his prescription

medication, which he takes daily to treat symptoms of PTSD and anxiety. As a result, "he was haunted by old memories of his stepfather sexually abusing him, and suffered even more severe anxiety as a result of the cell's harsh conditions than someone else might have." *Id.* ¶ 30.

Dr. Taft is the owner and primary practitioner of Taft PLLC, a psychology practice that contracted with Henderson County to perform psychological services—30 hours per week—at the jail. According to Anthony's first amended complaint ("amended complaint"), Dr. Taft outsourced his contractual responsibilities to Kevin Jeffries ("Jeffries"), a Licensed Chemical Dependency Counselor Intern who was not legally qualified to provide general psychological services [in Texas]. Dr. Taft did not provide Jeffries with any training, did not directly supervise him, did not communicate with him regarding his work at the jail, and did not provide any written policies or procedures for him to follow. Jeffries was never consulted in Anthony's case. Instead, "all decisions regarding housing and other restrictions for an inmate identified as having mental health issues or disabilities were made by correctional officers." *Id.* ¶ 60.

On September 20, 2024 Anthony filed the instant lawsuit. In the amended complaint, which is his operative pleading, Anthony sues Henderson County, the City of Trinidad, Texas ("Trinidad"), Dr. Taft, Taft PLLC, and Southern Health Partners, Inc. ("SHP"), a private company that contracted with Henderson County to provide medical care at the jail. Relevant to the instant motion to dismiss, Anthony brings claims under 42 U.S.C. § 1983 against Taft PLLC for the total deprivation of mental health care at the jail (conditions of confinement

claim), and, in the alternative, for the failure to supervise or institute adequate policies (*Monell* liability); under 42 U.S.C. § 1983 against Dr. Taft, individually, under a supervisory liability theory; against the Taft Defendants for negligence; and against Dr. Taft for gross negligence.[2]

The Taft Defendants move to dismiss under Rule 12(b)(6). Anthony opposes the motion, which the court is deciding on the briefs, without oral argument.

## II

"In deciding a Rule 12(b)(6) motion to dismiss, the court evaluates the sufficiency of [the] amended complaint by 'accept[ing] all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Bramlett v. Med. Protective Co. of Fort Wayne, Ind*., 855 F.Supp.2d 615, 618 (N.D. Tex. 2012) (Fitzwater, C.J.) (second alteration in original) (internal quotation marks omitted) (quoting *In re Katrina Canal Breaches Litig*., 495 F.3d 191, 205 (5th Cir. 2007)). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

─────────────────────

[2]Anthony also brings claims against Henderson County and Trinidad for violation of the Americans with Disabilities Act of 1991; against Henderson County under 42 U.S.C. § 1983 for the total deprivation of mental health care, total failure to supervise or institute adequate polices, and practice of using the violent cell for punishment; against Trinidad under 42 U.S.C. § 1983 for violation of the Equal Protection Clause of the Fourteenth Amendment; against Trinidad under 42 U.S.C. § 1983 for violation of the Fourth Amendment (excessive force); and against SHP for negligence. Because none of these claims is the subject of the instant motion to dismiss, the court will not address them here.

liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (alteration omitted) (quoting Rule 8(a)(2)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678.

III

The Taft Defendants contend that Anthony has failed to state a municipal liability claim against Taft PLLC under 42 U.S.C. § 1983.

A

A municipality is a "person" subject to suit under § 1983 under certain circumstances. *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 (1978). Although a municipality cannot be held liable simply on a theory of *respondeat superior*, *id.* at 691, it can be held liable if a deprivation of a constitutional right is inflicted pursuant to an official policy or custom, *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001). Although Taft PLLC is a private corporation, "[t]he standards applicable to determining liability under § 1983 against a municipal corporation are applicable to determining the liability of a private corporation performing a government function." *Olivas v. Corr. Corp. of Am.*, 408 F.Supp.2d

- 5 -

251, 254-55 (N.D. Tex. 2006) (Bleil, J.), *aff'd*, 215 Fed. Appx. 332 (5th Cir. 2007).[3]

Municipal liability requires proof of three elements: "(1) an official policy (or custom), of

which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a

constitutional violation whose 'moving force' is that policy or custom." *Valle v. City of

Houston*, 613 F.3d 536, 541-42 (5th Cir. 2010) (quoting *Pineda v. City of Houston*, 291 F.3d

325, 328 (5th Cir. 2002)).

 The first element requires that Anthony adequately plead an official policy or custom.

"[A] policy can be shown through evidence of an actual policy, regulation, or decision that

is officially adopted and promulgated by lawmakers or others with policymaking authority."

*Id.* at 542 (citing *Burge v. St. Tammany Parish*, 336 F.3d 363, 369 (5th Cir. 2003)).  A custom

is "a persistent, widespread practice of City officials or employees, which, although not

authorized by officially adopted and promulgated policy, is so common and well-settled as

to constitute a custom that fairly represents municipal policy." *Piotrowski*, 237 F.3d at 579

(quoting *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc) (per

curiam)).

 To satisfy the second element, Anthony must adequately plead the identity of a

policymaker with "final policymaking authority." *Rivera v. Hous. Indep. Sch. Dist.*, 349 F.3d

244, 247 (5th Cir. 2003) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)).

---

[3]The Taft Defendants do not dispute that Taft PLLC was performing a government function when, pursuant to its contract with Henderson County, it provided mental health services at the jail.

"A 'policymaker' must be one who takes the place of a governing body in a designated area of city administration." *Webster*, 735 F.2d at 841 (citing *Bennett v. City of Slidell*, 728 F.2d 762, 769 (5th Cir. 1984) (en banc)). "City policymakers not only govern conduct; they decide the goals for a particular city function and devise the means of achieving those goals. . . . [T]hey are not supervised except as to the totality of their performance." *Bennett*, 728 F.2d at 769. "[The court's] analysis must also take into account the difference between final decisionmaking authority and final policymaking authority, a distinction that this circuit recognized as fundamental[.] . . . [D]iscretion to exercise a particular function does not necessarily entail final policymaking authority over that function." *Bolton v. City of Dallas*, 541 F.3d 545, 548-49 (5th Cir. 2008) (per curiam) (citations omitted); *see also Jett v. Dall. Indep. Sch. Dist.*, 7 F.3d 1241, 1247 (5th Cir. 1993) (explaining distinction between final policymaking authority and mere decisionmaking).

The third element requires that Anthony adequately plead that the municipal policy or custom was the "moving force" of the constitutional deprivation, which requires a "high threshold of proof." *Piotrowski*, 237 F.3d at 580 (citing *Monell*, 436 U.S. at 694). The "plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Valle*, 613 F.3d at 542 (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997)). Anthony therefore "must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." *Id.* (quoting *Brown*, 520 U.S. at 411); *see also*

*Piotrowski*, 237 F.3d at 579 ("[E]ven a facially innocuous policy will support liability if it was promulgated with deliberate indifference to the 'known or obvious consequences' that constitutional violations would result." (quoting Brown, 520 U.S. at 407)).  Simple or even heightened negligence, however, is insufficient to meet the deliberate indifference requirement.  *Piotrowski*, 237 F.3d at 579 (quoting *Brown*, 520 U.S. at 407).

Alternatively, a plaintiff may assert a failure-to-train theory of municipal liability. "Failure to train is a separate theory of municipal liability, but the same standard applies both to a failure to train claim and to a municipal liability claim."  *Byers v. Navarro Cnty.*, 2012 WL 677203, at *16 (N.D. Tex. Mar. 1, 2012) (Fitzwater, C.J.) (citations omitted); *see also Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005).  "The failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury."  *Brown v. Bryan Cnty.*, 219 F.3d 450, 457 (5th Cir. 2000) (brackets omitted) (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)).  "In resolving the issue of a city's liability, the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform."  *City of Canton*, 489 U.S. at 390.  "[W]hen a municipal entity enacts a facially valid policy but fails to train its employees to implement it in a constitutional manner, that failure constitutes 'official policy' that can support municipal liability if it 'amounts to deliberate indifference.'" *Littell v. Hous. Indep. Sch. Dist.*, 894 F.3d 616, 624 (5th Cir. 2018) (quoting *City of Canton*, 489 U.S. at 388).

B

In support of his municipal liability claim, Anthony alleges that Taft PLLC delegated its contractual responsibilities to Jeffries, an individual who was not authorized under Texas law to provide psychological services; that Dr. Taft failed to train, supervise, or provide Jeffries with written policies or procedures regarding the housing and treatment of individuals with known mental health needs; and that this failure to provide policies, training, supervision, or qualified personnel amounts to deliberate indifference to the rights of inmates, including Anthony.

1

"[T]here are limited circumstances in which an allegation of a 'failure to train' [or failure to supervise] can be the basis for liability under § 1983." *City of Canton*, 489 U.S. at 387. To succeed on a failure-to-train or failure-to-supervise claim, a plaintiff must be able to show: (1) the training procedures or supervision of employees was inadequate, (2) a causal link between such failure and the violation of plaintiff's constitutional rights, and (3) such failure amounts to deliberate indifference. *Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009) (citation omitted). "'Deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (brackets and citation omitted). Thus when a municipality's policymakers[4] are on actual or constructive notice that a particular

---

[4]The Taft Defendants maintain that Anthony has failed to plausibly allege that Dr. Taft was an official policymaker *for Henderson County* or that policymaking authority over the

- 9 -

omission in their training program causes municipal employees to violate citizens' constitutional rights, the municipality may be deemed deliberately indifferent if the policymakers choose to retain that program.  *Id*. (citation omitted).

2

The Taft Defendants only appear to dispute the second element of Anthony's claim that there was a "Total Failure to Supervise or Institute Adequate Policies."  Am. Compl. at 28 (header preceding ¶ 123) (bold font omitted).  They contend that Anthony has failed to plausibly allege that a policy or custom of Dr. Taft, as opposed to a policy or custom of the jail or SHP, was the "moving force" behind the alleged constitutional violations and that, to the extent Anthony alleges that Jeffries was unqualified to provide mental health assessments at the jail, Anthony's "alleged constitutional rights violations (lack of water, sleep deprivation, lack of medical attention to his feet wounds) have nothing to do with his mental health."  Ds. Br. (ECF No. 18) at 5.[5]

---

mental health care at the jail had been delegated to him.  But as noted above, *see supra* note 3, the Taft Defendants do not dispute that Taft PLLC was performing a government function when it provided mental health care at the jail.  *See Olivas*, 408 F.Supp.2d at 254-55 ("The standards applicable to determining liability under § 1983 against a municipal corporation are applicable to determining the liability of a private corporation performing a government function.").  Nor do the Taft Defendants contend that Dr. Taft was not an official policymaker for Taft PLLC.

[5]The Taft Defendants also contend that Taft PLLC cannot be held vicariously liable for the conduct of Jeffries.  This argument is misplaced.  Anthony alleges that Taft PLLC is liable under § 1983 for its *own* allegedly unconstitutional conduct in delegating responsibilities to Jeffries and failing to train or supervise him; he is not seeking to hold Taft PLLC liable under a theory of *respondeat superior*.

- 10 -

Anthony maintains in response that Henderson County hired Dr. Taft to be the mental health provider for the jail; that he "delegated all the work to a single, unqualified person, who was not authorized to provide psychological services under Texas law," P. Br. (ECF No. 39) at 4; that Dr. Taft "did not institute *any policies at all* to ensure even the most basic oversight of inmates placed in conditions obviously dangerous to their mental health, such as those inherent to the violent cell," *id.*; that he did nothing to ensure that inmates continued to receive psychiatric medication for which they had existing prescriptions or to ensure that inmates with mental health issues were housed and treated appropriately and humanely; that he allowed untrained detention officers to use the violent cell for whatever they wished, without any oversight whatsoever; and that "it may be inferred that the nonexistent mental health care system caused Anthony to be placed in the violent cell without justification and remain there much longer than he would have if a reasonable mental health care system was in place," *id.* at 13-14.

C

Without suggesting a view on how Anthony's municipal liability claim will fare at the summary judgment stage or at trial, the court denies the Taft Defendants' motion to dismiss Anthony's municipal liability claim against Taft PLLC under 42 U.S.C. § 1983.

In support of the first element, Anthony alleges that Taft PLLC contractually agreed to provide mental health care at the jail; that Taft PLLC delegated its contractual obligation to Jeffries, who was "not qualified to treat individuals with a mental health disorder," Am. Compl. ¶ 35; and that neither Dr. Taft nor Taft PLLC provided Jeffries with any training,

- 11 -

supervision, or written policies or procedures to follow.  These allegations are sufficient, at the pleading stage, to plausibly allege that the training procedures or supervision of employees at the jail was insufficient.

Regarding the second element, the Taft Defendants contend that Anthony's constitutional violations "have nothing to do with his mental health,"  Ds. Br. (ECF No. 18) at 5, and thus cannot have been caused by a policy or custom of Dr. Taft or by Jeffries' lack of qualifications to provide mental health assessments at the jail.  The court disagrees.  "[T]he Constitutional right to adequate mental health and medical care . . . has been well-established and abundantly clear for some time."  *Cheek v. Nueces Cnty. Tex.*, 2013 WL 4017132, at *6 (S.D. Tex. Aug. 5, 2013).  Anthony plausibly pleads that the mental health care he received at the jail was "gross[ly] inadequa[te]," *id.* ¶ 124; that there was a "total deprivation of mental health care and related oversight," *id.* ¶ 121; and that inmates, including Anthony, "had no access to qualified mental health care." *Id.* ¶ 49.  In other words, he has plausibly pleaded that his constitutional injury—the deprivation of adequate mental health care at the jail—was caused by Taft PLLC's delegation of its mental health care obligation to someone unqualified to provide psychological services and its subsequent failure to train, supervise, or provide policies to follow with respect to inmates with mental health disorders.  As Chief Judge Godbey concluded in *Albritton v. Henderson County Texas*, a case involving some of the same parties:

> Albritton has alleged facts plausibly establishing that Taft and/or Taft PLLC created a policy or custom of providing no mental health care services to the inmates at the Henderson County Jail. Cody receiving no mental health care is the constitutional violation, and Taft's derelict policy of providing no mental health care to inmates of the jail is the driving force behind this constitutional violation. Accordingly, the Court holds that Albritton states sufficient facts to state a *Monell* section 1983 claim against Taft PLLC.

*Albritton v. Henderson Cnty. Tex.*, 2024 WL 1776380, at *7 (N.D. Tex. Apr. 23, 2024) (Godbey, C.J.).

In the context of their motion to dismiss Anthony's municipal liability claim, the Taft Defendants do not contend that Anthony has failed to plausibly allege that the Taft Defendants' failure to train, supervise, or provide policies to Jeffries amounts to deliberate indifference. Accordingly, the court will assume that Anthony has adequately pleaded the third element.

Because Anthony has plausibly alleged each of the elements of his § 1983 municipal liability claim against Taft PLLC, the court denies the Taft Defendants' motion to dismiss this claim.[6]

---

[6]Anthony also brings an alternative conditions of confinement claim against Taft PLLC under § 1983. But the Taft Defendants do not contend in their motion to dismiss that Anthony has failed to plausibly plead a claim under this alternative theory. Accordingly, the court at this time will not address Anthony's § 1983 conditions of confinement claim.

IV

The Taft Defendants maintain that Anthony has failed to state a claim under § 1983 against Dr. Taft in his individual capacity.

A

In his amended complaint, Anthony alleges that Dr. Taft is individually liable under § 1983 "for deciding, in his supervisory capacity, to institute the non-existent system of mental health care" at the jail. Am. Compl. ¶ 132. The Taft Defendants move to dismiss this claim on the ground that Anthony has failed to plausibly allege that Dr. Taft acted with subjective deliberate indifference. In support of their motion, the Taft Defendants contend that Anthony has failed to allege that Dr. Taft knew about Anthony's confinement in the violent cell, ignored him, or treated him incorrectly and that, to the extent Anthony "attempts to plead a supervisory theory and imput[e] constructive knowledge on [Dr.] Taft . . . [he] does not provide any concrete facts to show how an alleged policy or lack thereof to have 'qualified' mental health providers at the Jail was the proximate cause of Plaintiff's constitutional violation." Ds. Br. (ECF No. 18) at 7-8.

Anthony contends in response that the Taft Defendants misunderstand the nature of his allegations by focusing on Dr. Taft's lack of direct involvement with Anthony, explaining that "[t]his is not a typical 'episodic act or omission;' rather, it is an overarching, unlawful condition of confinement [Dr.] Taft and [Henderson County] decided together to impose on all the inmates at the jail." P. Br. (ECF No. 39) at 17. Anthony posits that Dr. Taft may be

- 14 -

found individually liable for his decision to abandon all of his patients at the jail, including Anthony; for the wholesale denial of mental health care to inmates at the jail and the imposition of a harmful condition that was not reasonably related to a legitimate goal; and, alternatively, in a supervisory capacity "for his failures as a supervisor, which ignored the obvious consequences of his complete dereliction of duty." *Id.* at 19.

B

"When a plaintiff alleges liability on the part of supervisory officials, he must adequately plead facts showing that (1) the official 'participated in acts that caused constitutional deprivation' or (2) 'implemented unconstitutional policies causally related to his injuries.'" *Damond v. City of Rayville*, 127 F.4th 935, 938 (5th Cir. 2025) (quoting *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 421 (5th Cir. 2017)). "When, as here, a plaintiff alleges a failure to train or supervise, 'the plaintiff must show that: (1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference.'" *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005) (quoting *Smith v. Brenoettsy*, 158 F.3d 908, 911-12 (5th Cir. 1998)).

"Deliberate indifference" is a "stringent standard, requiring proof that a municipal actor disregarded a known or obvious consequence of his action," for which "[a] showing of simple or even heightened negligence will not suffice." *Valle*, 613 F.3d at 542, 547 (citation

- 15 -

omitted). To demonstrate deliberate indifference, a plaintiff must show that "in light of the duties assigned to specific . . . employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers . . . can reasonably be said to have been deliberately indifferent to the need." *Id*. at 547 (quoting *City of Canton*, 489 U.S. at 390).

C

To the extent the Taft Defendants move to dismiss Anthony's § 1983 supervisory liability claim asserted against Dr. Taft on the ground that Anthony has failed to plausibly allege causation, the court has already concluded above that Dr. Taft's delegation of Taft PLLC's mental health care obligation to someone unqualified to provide psychological services and subsequent failure to train, supervise, or provide policies to follow with respect to inmates with mental health disorders caused Anthony's alleged constitutional deprivation, i.e., "the non-existent system of mental health care" at the jail. *See supra* § III(C).

Insofar as the Taft Defendants contend that Anthony has failed to plead that Dr. Taft acted with subjective deliberate indifference, the court is persuaded by the reasoning of Chief Judge Godbey in *Albritton*, which involves similar allegations against the Taft Defendants:

> Typically to establish the deliberate indifference prong for a failure to train claim, the plaintiff must show a pattern of similar constitutional violations. But *City of Canton* left a narrow set of circumstances where the risk of a constitutional violation due to a failure to train or supervise is so obvious as to rise to deliberate indifference. Albritton alleges that "Taft's system of mental health care at the jail was grossly inadequate and failed to

> comply with any recognized standards for correctional mental
> health care . . . by providing no legally qualified mental health
> care at the jail at all." Albritton further alleges that "no one at the
> jail was qualified to recognize mental health emergencies when
> they occurred, and Taft had no policies in place to deal with any
> such emergencies."  The risk that Taft's dereliction of duty to
> oversee mental health care at the jail would lead to inmates
> receiving no mental health care is so obvious as to rise to
> deliberate indifference.

*Albritton*, 2024 WL 1776380, at *6 (internal citations omitted).  Anthony makes the same

allegations in this case.  The court therefore concludes, as in *Albritton*, that Anthony has

sufficiently pleaded facts to state a plausible claim against Dr. Taft, individually, for

supervisory liability under § 1983.  Accordingly, the court denies the Taft Defendants' motion

to dismiss this claim.

## V

Anthony also asserts a medical negligence claim under Texas law.[7]

## A

Under Texas law,

> [w]hen the negligence alleged is in the nature of medical
> malpractice, the plaintiff has the burden of proving (1) a duty by
> the physician or hospital to act according to an applicable
> standard of care; (2) a breach of that standard of care; (3) an
> injury[;] and (4) a causal connection between the breach of care
> and the injury.

---

[7]Although Anthony does not use the term medical negligence in the amended
complaint, he does not object in his response brief to the Taft Defendants' characterization
of his negligence claim as a claim for medical negligence.

- 17 -

*Quijano v. United States*, 325 F.3d 564, 567 (5th Cir. 2003) (citing *Mills v. Angel*, 995 S.W.2d

262, 267 (Tex. App. 1999, no pet.); *Denton Reg'l. Med. Ctr. v. LaCroix*, 947 S.W.2d 941, 950

(Tex. App. 1997, pet denied)).  The Taft Defendants move to dismiss Anthony's claim for

medical negligence on the grounds that he does not sufficiently or specifically allege what

duty the Taft Defendants owed to him,[8] and "does not sufficiently allege (1) what [was] the

standard of care required of the Taft Defendants, (2) any breach of the standard of care by the

Taft Defendants, or (3) how any act or omission of the Taft Defendants proximately caused

Plaintiff's damages."[9]  Ds. Br. (ECF No. 18) at 8-9.

Anthony responds that Dr. Taft had a duty to provide the mental health care at the jail

and arrange for the appropriate treatment of those with serious mental health needs; that he

breached that duty by denying inmates at the jail any access to qualified mental health care,

---

[8]The Taft Defendants also contend that, "[t]o the extent that Plaintiff claims that they owed a duty to somehow change the conditions of his confinement and move him out of solitary confinement, Plaintiff has neither cited to any cause of action that creates such a duty, nor plead any facts or law to explain how the Taft Defendants possessed any such authority."  Ds. Br. (ECF No. 18) at 8.  But as the court has explained, Anthony does not base his medical negligence claim on any duty of the Taft Defendants to change his conditions of confinement.  Instead, Anthony alleges that the Taft Defendants breached their duty to provide more than a "functionally non-existent" system of mental health care at the jail.

[9]They also point out that Anthony includes in support of his medical negligence claim allegations related to an inmate named "Cody," who was apparently placed in the violent cell for two days.  *See* Am. Compl. ¶ 146.  The court assumes that these allegations from a different, related case were inadvertently included in the amended complaint and has not considered them in deciding the Taft Defendants' motion to dismiss.

- 18 -

failing to institute any policies regarding the provision of mental health care or appropriate housing and treatment of inmates with serious mental health needs, and leaving untrained, unqualified correctional officers to make critical decisions impacting mental health care; and that, as a result of the breach, he did not receive any mental health care, his serious mental health needs were not accommodated or addressed in any way, he was denied his prescribed psychiatric medications, and his mental health was directly harmed by the horrific conditions of the violent cell without any input or oversight by medical or mental health staff.

B

Under Texas law, "[t]he general duty of a physician or health care provider is to act as a reasonably prudent physician or health care provider would act in the same or similar circumstances." *Martinez v. Pfizer Inc*., 388 F.Supp.3d 748, 769 (W.D. Tex. 2019) (citing *Chambers v. Conaway*, 883 S.W.2d 156, 158 (Tex. 1993)). In the amended complaint, Anthony alleges that Dr. Taft took the inmates at the jail on "as his patients when he agreed to provide their mental health care." Am. Compl. ¶ 49. Regarding the standard of care, Anthony points to National Commission on Correctional Health Care ("NCCHC") standards and Texas law to allege that the standard of care applicable to Dr. Taft required more than "a single, unlicensed, unqualified person to allegedly provide mental health care at the jail." Am. Compl. ¶ 54.[10] Anthony asserts that NCCHC standards instead require that "mental health

_____

[10]The court notes, as did Chief Judge Godbey in *Albritton*,

- 19 -

professionals,"[11] should have *sole responsibility* to make "clinical decisions and actions regarding mental health care provided to inmates," *id.* ¶ 56, and that Dr. Taft breached the standard of care when he permitted a system of mental health care at the jail that was "functionally non-existent," *id.* ¶ 145. Anthony alleges that "the jail had no policies in place, and no qualified personnel in place, to appropriately handle someone with serious disabilities like Anthony. Additionally, there was no professional oversight to act as a check on decisions

---

> that this ruling does not dispose of [Anthony]'s duty to serve on [the Taft Defendants] expert witness testimony to establish the standard of care as required by section 74.351 of the Texas Civil Practice & Remedies Code. [Anthony] is beholden to following Rule 26(a)'s procedural requirements for disclosing an expert. *See Passmore v. Baylor Health Care Sys.*, 823 F.3d 292, 296-97 (5th Cir. 2016) (determining that Rule 26 controls over section 74.351 regarding the deadline for plaintiff to submit expert testimony); *see also* Fed. R. Civ. P. 26(a).

*Albritton*, 2024 WL 1776380, at *4.

[11]Anthony alleges that

> NCCHC defines "mental health staff" to include "qualified health care professionals who have received instruction and supervision in identifying and interacting with individuals in need of mental health care services." Jeffries did not meet this definition, as he received no instruction or supervision, nor was he a "qualified health care professional," which the NCCHC defines as someone who "by virtue of their education, credentials, and experience are permitted by law to evaluate and care for patients." . . . Jeffries was not permitted by Texas law to evaluate and care for patients.

Am. Compl. ¶ 48.

- 20 -

made by the wholly unqualified correctional officers." *Id.* ¶ 146. Finally, Anthony asserts that Dr. Taft's "functionally non-existent" system of mental health care caused him serious harms, including, *inter alia*, mental suffering as a result of the deprivation of his previously-prescribed psychiatric mediation. *See* Am. Compl. ¶¶ 30, 147.

The court holds that Anthony has pleaded sufficient facts to establish a standard of care; to plausibly allege that the Taft Defendants breached that standard of care by providing a "functionally non-existent" system of mental health care at the jail; and to plausibly allege that the Taft Defendants' breach left Anthony without access to mental health care, which at a minimum caused him psychological harm. *See Albritton*, 2024 WL 1776380, at *4 ("SHP takes issue with Albritton's use of its own policies and NCCHC policies to allege a standard of care, and the Court notes that these policies do not prove a standard of care. However, at the motion to dismiss stage, the Court is tasked with accepting well pled facts as true, and the Court concludes that Albritton has met [her] burden of pleading facts regarding the standard of care owed to Cody by the SHP medical staff, and that the medical staff breached that standard of care."); *id.* at *7 (concluding, under similar circumstances, that plaintiff plausibly alleged health care liability claim because "the Taft Defendants allegedly breached their duty of care by providing no mental health care services at all," and the "breach of duty left Cody without access to mental health care causing him both psychological and physical harm.").

Accordingly, the court denies the Taft Defendants' motion to dismiss Anthony's medical negligence claim.

VI

The Taft Defendants move in the alternative under Rule 12(e) for an order requiring Anthony to provide a more definite statement of his claims "because Plaintiff's claims are so vague and ambiguous that the Taft Defendants cannot reasonably prepare a response or identify what Plaintiff's claims are against them." Ds. Br. (ECF No. 18) at 9.

A

"A motion for a more definite statement under Rule 12(e) is available where the pleading 'is so vague or ambiguous that the party cannot reasonably prepare a response.'" *Conceal City, L.L.C. v. Looper L. Enf't, LLC*, 917 F.Supp.2d 611, 621 (N.D. Tex. 2013) (Fitzwater, C.J.) (quoting Rule 12(e)). "When a party moves for a more definite statement under Rule 12(e), the court is granted discretion to determine whether the complaint is so vague that the moving party cannot reasonably be required to frame a responsive pleading." *Chapman v. Dall. Cnty. Cmty. Coll. Dist.*, 2006 WL 3442057, at *4 (N.D. Tex. Nov. 29, 2006) (Fish, C.J.) (citing *Mitchell v. E-Z Way Towers, Inc.*, 269 F.2d 126, 130 (5th Cir. 1959)). "When a defendant is complaining of matters that can be clarified and developed during discovery, not matters that impede [its] ability to form a responsive pleading, an order directing the plaintiff to provide a more definite statement is not warranted." *Johnson v. BAE Sys. Land & Armaments, L.P.*, 2012 WL 5903780, at *4 (N.D. Tex. Nov. 26, 2012) (Fitzwater, C.J.). "Motions for a more definite statement are generally disfavored." *Id.* (citation omitted).

- 22 -

B

The court concludes that Anthony's claims against the Taft Defendants are not so vague that the Taft Defendants cannot reasonably be required to frame a responsive pleading. As explained above, Anthony has pleaded plausible claims under 42 U.S.C. § 1983 for *Monell* liability and against Dr. Taft for supervisory liability. He also pleads an alternative conditions of confinement claim that the Taft Defendants do not move to dismiss. And he has adequately pleaded a clam for medical negligence under Texas law. The Taft Defendants do not explain what additional information they require in order to "reasonably prepare a response." To the extent that they require additional information in order to defend against Anthony's claims asserted against them, that information can be "clarified and developed during discovery." *Johnson*, 2012 WL 5903780, at *4. Anthony's allegations are adequate to permit the Taft Defendants to respond to the claims asserted against them. Accordingly, the Taft Defendants' alternative motion for a more definite statement is denied.

- 23 -

\*    \*    \*

For the reasons explained, the court denies the Taft Defendants' motion under Rule 12(b)(6) to dismiss Anthony's claims asserted against them and denies their alternative motion for a more definite statement.

**SO ORDERED**.

June 23, 2025.

_____
SIDNEY A. FITZWATER
SENIOR JUDGE

- 24 -