IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

DANIEL ANTHONY,                     §
                                    §
              Plaintiff,             §
                                    §
VS.                                 §        Civil Action No. 3:24-CV-2394-D
                                    §
HENDERSON COUNTY, TEXAS,            §
et al.,                             §
              Defendant.            §

MEMORANDUM OPINION
AND ORDER

        In this action by plaintiff Daniel Anthony ("Anthony") arising from his arrest and

detention in the Henderson County Jail, defendants Henderson County and Southern Health

Partners, Inc. ("SHP") move under Fed. R. Civ. P. 12(c) for judgment on the pleadings.  For

the reasons that follow, the court denies the motions.[1]

I

        The relevant background facts of this case are largely set out in a prior memorandum

opinion and order and need not be repeated at length for purposes of deciding defendants'

motions.  *Anthony v. Henderson County, Tex. (Anthony II)*, 2025 WL 1737320, at *1-2 (N.D.

Tex. June 23, 2025) (Fitzwater, J.).  Relevant to the instant motions, Anthony brings a claim

_____

        [1]Anthony filed on November 7, 2025 a motion for leave to file a surreply to SHP's
Rule 12(c) motion.  The court denies the motion without prejudice as moot because the
court's resolution of SHP's Rule 12(c) motion does not turn on the arguments that Anthony
seeks to respond to in a surreply.  *See, e.g.*, *Samurai Glob., LLC v. Landmark Am. Ins. Co.*,
2024 WL 1837960, at *2 n.3 (N.D. Tex. Apr. 26, 2024) (Fitzwater, J.) (applying similar
reasoning in declining to grant leave to file surreply).

under 42 U.S.C. § 1983 against Henderson County for unlawful conditions of confinement and a medical negligence claim against SHP.[2]  Henderson County and SHP move under Rule 12(c) for judgment on the pleadings[3] on the conditions of confinement and medical negligence claims.  Anthony opposes the motions, which the court is deciding on the briefs, without oral argument.

II

Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Rule 12(c).  The standard for deciding a motion under Rule 12(c) is the same as the one for deciding a motion to dismiss under Rule 12(b)(6).  *See Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 313 n.8 (5th Cir.2002).[4]  Because the standard is the same, the court will rely on Rule 12(b)(6) decisions as well as Rule 12(c) rulings when discussing the applicable standard and procedure.

"In deciding a Rule 12(b)(6) motion to dismiss, the court evaluates the sufficiency of

---

[2]Anthony also brings claims under alternative theories of municipal liability against Henderson County.  But Henderson County does not contend in its Rule 12(c) motion that Anthony has failed to plausibly plead a claim under those alternative theories.  Accordingly, the court will not address these claims.

[3]Henderson County refers to its motion as a motion to dismiss, although it relies on Rule 12(c).  Regardless, as noted above, the standards for deciding a Rule 12(c) motion are the same as those for deciding a Rule 12(b)(6) motion to dismiss.

[4]*See Great Plains Tr. Co.*, 313 F.3d at 313 n.8 ("A number of courts have held that the standard to be applied in a Rule 12(c) motion is identical to that used in a Rule 12(b)(6) motion." (citation omitted) (internal quotation marks omitted)).

- 2 -

[plaintiff's amended] complaint by 'accept[ing] all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*, 855 F.Supp.2d 615, 618 (N.D. Tex. 2012) (Fitzwater, C.J.) (second alteration in original) (internal quotation marks omitted) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d at 205).  To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]").  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (alteration omitted) (quoting Rule 8(a)(2)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

III

The court first considers Anthony's conditions of confinement claim against Henderson County.

A

"The Fourteenth Amendment's Due Process Clause provides pretrial detainees protections extending beyond those granted to sentenced defendants." *Alexander v. Philip R. Taft Psy D & Assocs., P.L.L.C.*, 143 F.4th 569, 579 (5th Cir. 2025) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979)). Unlike a sentenced inmate, "[d]ue process requires that a pretrial detainee not be punished." *Bell*, 441 U.S. at 535 n.16. Because Anthony was a pretrial detainee, the question is whether he suffered a violation of his Fourteenth Amendment rights. The applicable standard for making this determination depends on whether the constitutional challenge is based on a "condition of confinement" or an "episodic act or omission." *Flores v. County of Hardeman, Tex.*, 124 F.3d 736, 738 (5th Cir.1997) (citing *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 644 (5th Cir.1996) (en banc)).

In his amended complaint ("complaint"), Anthony alleges a conditions of confinement claim. *See Alexander v. S. Health Partners, Inc.*, 2024 WL 3240652, at *3 (N.D. Tex. June 28, 2024) (Starr, J.) (classifying plaintiff's claim as conditions of confinement claim because plaintiff's harms "stem from the barren conditions within the violent cell").[5] "A challenge

---

[5]Anthony's conditions of confinement claim arises out of the conditions of the violent cell and the lack of mental health care provided at the jail. Because Henderson County's brief only addresses the conditions of the violent cell, the court considers whether Anthony's conditions of confinement claim should be dismissed to the extent it is premised on the

- 4 -

to a condition of confinement is a challenge to 'general conditions, practices, rules, or restrictions of pretrial confinement.'" *Est. of Henson v. Wichita County, Tex.*, 795 F.3d 456, 463 (5th Cir. 2015) (quoting *Hare*, 74 F.3d at 644). To prevail on this claim, a plaintiff must establish that

> (1) a rule or restriction or . . . the existence of an identifiable intended condition or practice . . . [or] that the jail official's acts or omissions were sufficiently extended or pervasive; (2) which was not reasonably related to a legitimate governmental objective; and (3) which caused the violation of [the plaintiff's] constitutional rights.

*Duvall v. Dallas County, Tex.*, 631 F.3d 203, 207 (5th Cir. 2011) (first alteration in original) (internal quotation marks omitted). Henderson County contends that Anthony's conditions of confinement claim fails because the conditions of the violent cell were reasonably related to a legitimate governmental purpose and did not deprive Anthony of life's minimal necessities. The court addresses each ground in turn.

B

To determine whether a condition is constitutionally permissible, the court asks whether the condition is "rationally related to a legitimate nonpunitive governmental purpose." *Bell*, 441 U.S. at 561. "[I]f a restriction or condition is not reasonably related to a legitimate purpose—if it is arbitrary or purposeless—a court may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees." *Id.* at 539. Thus Anthony must demonstrate "that the restrictions

---

conditions of the violent cell.

are not reasonably related to a legitimate governmental objective." *Alexander*, 143 F.4th 580.

In *Alexander*, a case involving some of the same parties, the Fifth Circuit concluded that a violent cell's conditions, nearly identical to the conditions of the violent cell in this case, were "reasonably related to the legitimate government interest of protecting suicidal inmates from self-harm." *Id.* at 582.  Relying on *Alexander*, Henderson County maintains that it had a legitimate interest in protecting Anthony from self-harm and that the conditions of the violent cell were sufficiently related to that interest.  Anthony responds that this precedent is inapposite because, unlike the plaintiff in *Alexander*, Anthony did not express that he was suicidal and the jail officials had no reason to believe that he was.

The court concludes that Anthony has plausibly pleaded that the conditions of the violent cell were not reasonably related to a legitimate governmental purpose.  While *Alexander* involved violent cell conditions nearly identical to the violent cell conditions at issue here, the court limited its holding to the circumstances of that case.  *See id.* at 584 n.11. And as Anthony maintains, his circumstances are different.  The plaintiff in *Alexander* informed jail officials that he was suicidal, *id.* at 577, whereas Anthony did not express that he was suicidal and jail officials had no reason to believe that he was.  As the Court explained in *Bell*, throwing a detainee in a dungeon and keeping him shackled there "may ensure his presence at trial and preserve the security of the institution," but "it would be difficult to conceive of a situation where conditions so harsh" would be reasonably related to any purpose except punishment.  *Bell*, 441 U.S. at 539 n.20.  Likewise, throwing a non-

- 6 -

suicidal detainee in a violent cell may ensure that he does not commit self harm, but it is difficult to conceive how this extreme measure could be reasonably related to any purpose except punishment. *See id.*; *May v. Sheahan*, 226 F.3d 876, 884 (7th Cir. 2000) ("[I]t is hard to see how shackling an AIDS patient to his or her bed around the clock, despite the continuous presence of a guard, is an appropriate policy for . . . reduc[ing] the risk of a breach of security[.]"); *Blackmon v. Sutton*, 734 F.3d 1237, 1242 (10th Cir. 2013) (record suggested that jail officials acted without legitimate purpose because plaintiff was "shackled to the [restraint] chair for long stretches when there was no hint he posed a threat of harming himself or anyone else"). Because Anthony has plausibly alleged that the conditions of the violent cell were not reasonably related to a legitimate governmental purpose, Henderson County's motion to dismiss is denied on this basis.

C

To prevail on his conditions of confinement claim, Anthony must also allege facts that demonstrate that the conditions in Henderson County's violent cell "deprive[d] him of life's necessities." *Alexander*, 2024 WL 3240652, at *5. The complained-of conditions must involve more than a "*de minimis* violation." *Ross v. Valdez*, 2013 WL 3242682, at *2 (N.D. Tex. June 27, 2013) (Fitzwater, C.J.) (citing *Duvall*, 631 F.3d at 208). For instance, "isolated examples of illness, injury, or even death, standing alone, cannot prove that conditions of confinement are constitutionally inadequate." *Shepherd v. Dallas County*, 591 F.3d 445, 454 (5th Cir. 2009). Rather, the condition must amount to "a serious deficienc[y] in providing for [Anthony's] basic human needs." *Alexander*, 2024 WL 3240652, at *4 (first alteration

in original) (quoting *Shepherd*, 591 F.3d at 454).

The court concludes that Anthony has plausibly alleged that the violent cell's conditions deprived him of life's minimal necessities. As discussed, *Alexander* involved violent cell conditions nearly identical to the conditions alleged here. There, the Fifth Circuit disagreed with the district court's conclusion that "the violent cell's conditions did not deprive [the plaintiff] of life's minimal necessitates." *Alexander*, 143 F.4th at 583 n.9. This suggests that Anthony's stay in the violent cell deprived him of life's minimal necessities. *See id.* Moreover, Anthony remained in the violent cell two days longer than did the plaintiff in *Alexander*. *See Davis v. Scott*, 157 F.3d 1003, 1006 (5th Cir. 1998) (explaining that "length of confinement" is relevant to whether plaintiff was deprived of "life's necessities").[6] Accordingly, the court denies Henderson County's motion to dismiss Anthony's conditions of confinement claim.[7]

---

[6]Although the court in *Davis* analyzed the plaintiff's conditions of confinement claim under the Eighth Amendment, the court may look to Eighth Amendment cases for guidance because a pretrial detainee's due process rights are "at least as great as the Eighth Amendment protections available to a convicted prisoner." *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983).

[7]Henderson County also maintains that Anthony's conditions of confinement claim fails because he did not suffer an injury. But Anthony alleges in his complaint that he suffered psychological harm in connection with his stay in the violent cell. *See* Am. Compl. (ECF No. 13) ¶¶ 28, 30, 159.

- 8 -

IV

The court now turns to Anthony's medical negligence claim against SHP.

A

"Under Texas law, [w]hen the negligence alleged is in the nature of medical malpractice, the plaintiff has the burden of proving (1) a duty by the physician or hospital to act according to an applicable standard of care; (2) a breach of that standard of care; (3) an injury[;] and (4) a causal connection between the breach of care and the injury." *Anthony II*, 2025 WL 1737320, at *8 (alteration in original) (citing *Quijano v. United States*, 325 F.3d 564, 567 (5th Cir. 2003)). SHP moves to dismiss Anthony's medical negligence claim on the grounds that "SHP had no duty to make a determination as to when and how long to place Anthony in the [violent cell] or the conditions of the [violent cell]" and that "nothing SHP did or failed to do proximately caused Anthony's [injuries]." D. Br. (ECF No. 82) 2.[8]

B

The court concludes that Anthony has pleaded a plausible medical negligence claim. Anthony does not base his medical negligence claim solely on an alleged duty on SHP's part to alter his conditions of confinement. Rather, Anthony points to the National Commission on Correctional Health Care ("NCCHC") standards and SHP's internal policies to allege that SHP had a duty, as the medical provider to inmates at the jail, to take "steps to ensure that

---

[8]SHP does not contest Anthony's assertion that "SHP is vicariously liable for the conduct of its employees, which was performed entirely within the course and scope of their employment." Am. Compl. (ECF No. 13) ¶ 144.

a practice of segregation [does] not adversely affect an inmate's health." Am. Compl. (ECF No. 13) ¶¶ 63, 67, 71 (alteration in original) (internal quotation marks omitted).[9] And Anthony maintains that SHP deviated from this standard of care because it "completely failed" to monitor Anthony's health and well-being while he was under SHP's care. *Id.* at ¶ 153. According to his complaint, SHP did not evaluate him upon intake, failed to examine him until he was released from the violent cell, never provided any treatment, and withheld his pre-existing prescription.[10] These facts are sufficient to allege that SHP had a duty to meet the alleged standard of care and failed to do so. *See Albritton v. Henderson County, Tex.*, 2024 WL 1776380, at *4 (N.D. Tex. Apr. 23, 2024) (Godbey, C.J.) (denying motion to dismiss health care liability claim where plaintiff alleged that SHP "completely failed to monitor [plaintiff's] health, citing both [NCCHC] standards and SHP's own written policies as standards of care"); *cf. Alexander v. S. Health Partners, Inc.*, 2023 WL 3961704, at *3 (N.D. Tex. June 12, 2023) (Starr, J.) (dismissing medical negligence claim against SHP where plaintiff alleged that medical staff passed him medication each day, he visited with

---

[9]The court notes, as did Chief Judge Godbey in *Albritton*, "that this ruling does not dispose of [Anthony]'s duty to serve on SHP expert witness testimony to establish the standard of care . . . [he] is beholden to following Rule 26(a)'s procedural requirements for disclosing an expert." *Albritton v. Henderson County, Tex.*, 2024 WL 1776380, at *4 (N.D. Tex. Apr. 23, 2024) (Godbey, C.J.) (citations omitted).

[10]In its reply brief, SHP maintains that, because it was the medical provider rather than the mental health care provider in the jail, it was not responsible for providing Anthony his psychiatric medication. The allegations in Anthony's complaint do not support that inference. Anthony alleges that SHP withheld his psychiatric medication and that Henderson County contracted with the mental health care provider to provide psychological, not psychiatric, services.

medical staff, and medical staff prescribed him medication).

Moreover, Anthony has alleged sufficient facts to establish that SHP's breach was a proximate cause of his injuries. He alleges that SHP's withholding of his medication and complete failure to monitor him caused him to suffer psychological harm. *See Albritton*, 2024 WL 1776380, at *4 (concluding that plaintiff plausibly alleged that SHP caused him physical and psychological harm because it withheld medication and failed to provide continuity of care); *Anthony II*, 2025 WL 1737320, at *9 (concluding that plaintiff plausibly alleged causation where defendants' breach left plaintiff without access to health care); *Vernier v. Smith County, Tex.*, 2025 WL 2633208, at *11 (E.D. Tex. Apr. 30, 2025) (denying motion to dismiss medical malpractice claim where plaintiff alleged that defendant failed to "administer the decedent's mental medications" and "adequately monitor and observe decedent . . . [and] that such violations were the proximate cause of decedent's ultimate death."), *rec. adopted*, 2025 WL 2491114 (E.D. Tex. Aug. 29, 2025). Accordingly, the court denies SHP's motion to dismiss this claim.

*       *       *

For the reasons explained, the court denies the motions for judgment on the pleadings.

**SO ORDERED**.

December 9, 2025.

SIDNEY A. FITZWATER
SENIOR JUDGE

- 11 -